IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID SILVER,

      Plaintiff,

v.                                                                                           CV 15-830 WPL/KK

QUORA, INC., and ADAM D'ANGELO,
Founder, Principal Owner, and CEO, Quora, Inc.,

      Defendants.

**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS'
MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR SANCTIONS, AND
DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Quora, Inc., and Adam D'Angelo filed a joint motion to dismiss. (Doc. 11.) Quora contends that David Silver's claims against it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because venue is not proper in the District of New Mexico. D'Angelo made a special appearance to challenge this Court's personal jurisdiction over him. Silver then filed a Motion for Sanctions under Federal Rules [sic] of Civil Procedure 11(c), requesting I order the Defendants to prove that Silver is a registered Quora user, and, in the absence of such proof, sanction the Defendants under Rule 11. (Doc. 19.) Later, Silver filed a Motion for Temporary Restraining Order, requesting that I issue a temporary restraining order ("TRO") and order the Defendants to remove two allegedly libelous statements from Quora. (Doc. 20.)

For the reasons explained below, I grant-in-part and deny-in-part the Defendants' motion to dismiss, deny Silver's motion for sanctions, and deny Silver's motion for a TRO.

**BACKGROUND**

The following background information comes from the parties' filings to date and is not a final adjudication of the facts in this case.

Silver is a long-time venture capitalist residing in New Mexico. Silver contends that he never registered as a Quora user. (Doc. 19 at 1; Silver Affidavit, *id.* at 7.) He filed suit against Quora and D'Angelo over two statements posted on Quora's website by two allegedly fictitious persons in response to a question about Silver. One statement comes from Tessa Salton and states that Silver is "not licensed or accredited any longer. A fraud." (Doc. 1 at 2.) The other comes from Neil MacAskill and reads that "[y]ou are better off buying lottery tickets. One of our checks to him supposedly got lost so we sent him another. Then he cashed both and never did a thing for us. Said he built a business development plan but never delivered it. Save your money." (*Id.* at 2-3.) Silver alleges that these statements are false. He wrote Quora and requested that Quora remove the statements. Silver contends that the ability of two fictitious persons to post on Quora violates Quora's Terms of Service ("TOS"). Thus, he alleges that the Defendants "willingly, wantonly and recklessly published libelous statements of their own, by republishing these defamatory statements" and acted with actual malice by not taking down the statements. (*Id.* at 3.) Silver does not allege any personal act or omission by D'Angelo.

Quora is a Delaware corporation, with principal offices in California, which operates a self-described question-and-answer website. Quora does not have a New Mexico office. Quora contends that Silver registered as a user with Quora on October 1, 2012, using his email address: dsilver@sfcapital.com. (Decl. Diana Tan, Doc. 11 Ex. A at 2.) Quora is accessible world-wide.

Adam D'Angelo is a California resident. D'Angelo is the co-founder and chief executive officer ("CEO") of Quora. He has never met Silver and had not heard of Silver until this case.

(Decl. Adam D'Angelo, Doc. 11 Ex. B at 2.) D'Angelo does not have any personal contact with New Mexico and has never visited the state. (*Id.*) It is unclear whether Silver sued D'Angelo in his personal or corporate capacity, so for purposes of this Order, I assume that D'Angelo was sued in both capacities.

Quora's TOS, which must be accepted when a user registers, state that "[a]ll Content, whether publicly posted or privately transmitted, is the sole responsibility of the person who originated such Content. [Quora] may not monitor or control the Content posted [on the website]." (Doc. 11 at 3, Ex. A-3 at 2 (Quora's TOS).) Furthermore, Quora's TOS contains a forum selection clause, stating that "all claims, legal proceedings or litigation arising in connection with the [Quora] Service will be brought solely in Santa Clara County, California, and [users] consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum." (Doc. 11 at 3-4, Ex. A-3 at 9.) Users must register with Quora before they are allowed to post on the site. Quora does not contribute any substantive content to the questions and answers on its website.

## STANDARD OF REVIEW

Because Silver proceeds pro se, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces, N.M.*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for pro se litigants' "failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935

F.2d at 1110). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* (citation omitted).

**MOTION TO DISMISS**

The Defendants' motion to dismiss is essentially two combined motions: Quora's motion to dismiss under Rule 12(b)(3) for improper venue, and D'Angelo's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. I address them separately.

**A. Venue with regard to Quora**

Quora argues that its TOS, to which Silver allegedly agreed, contains a binding forum selection clause that lays venue exclusively in Santa Clara County, California. Silver contends that he never registered with Quora and is not bound by the TOS.

Whether venue is proper is generally governed by 28 U.S.C. § 1391, which provides that

> [a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b). These provisions control the venue determination "[e]xcept as otherwise provided by law." § 1391(a).

Rule 12(b)(3) provides for the affirmative defense of improper venue and 28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "In civil cases, the question of whether a litigant has brought an action in the proper court is a question of law, while the question of whether to dismiss or transfer an action filed in an improper venue is within the

district court's sound discretion and reviewed for abuse of discretion only." *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 (10th Cir. 2006) (quotation omitted).

The Supreme Court recently clarified the interplay of Rule 12(b)(3), § 1406(a), and forum selection clauses in *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx.*, 134 S. Ct. 568 (2013). The Court concluded in *Atlantic Marine* that a case filed in a district that is proper under § 1391(b) may not be dismissed under § 1406(a) or Rule 12(b)(3), that is, "[i]f the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district 'wrong.'" *Id.* at 577-78.

As an initial matter, there is a material dispute of fact as to whether Silver actually signed up for Quora and consented to the Quora's TOS. Given this material dispute, it would be improper to enforce the forum selection clause in Quora's TOS at this time, even if the clause turns out to be enforceable through a motion to transfer under 28 U.S.C. § 1404(a).

Even if Silver signed up for Quora and the forum selection clause applies, that does not change the venue analysis. In this case, venue would be proper in the Northern District of California, where Quora maintains its offices because Quora and D'Angelo are "residents" of California. *See* § 1391(b)(1). I assume that D'Angelo also resides in the Northern District of California, however, if he resides in a different federal judicial district, venue would also be proper in that district for the reason stated above. Venue would also be proper in New Mexico because "[t]he tort of libel is generally held to occur wherever the offending material is circulated," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984), and therefore "a substantial part of the events or omissions giving rise to the claim occurred" in New Mexico, where Silver resides and experienced the alleged injury, § 1391(b)(2). Because I conclude that

5

federal venue statutes establish that suit may be brought in New Mexico, a contractual bar cannot render venue in this district "wrong." *Atlantic Marine*, 134 S. Ct. at 578.

For these reasons, I conclude that Quora is not entitled to dismissal for improper venue under Rule 12(b)(3) and the motion to dismiss is denied as to Quora.

### B. Personal Jurisdiction over D'Angelo

It is well-established that the plaintiff bears the burden of showing that a court has personal jurisdiction over a defendant. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When a defendant bases its lack of personal jurisdiction argument on the pleadings and other documents, as in this case, the plaintiffs can meet this burden with a *prima facie* showing of personal jurisdiction. *Id*. In that situation, the Court accepts "'as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff[s'] complaint.'" *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted)).

To establish personal jurisdiction in a diversity case, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that the exercise of personal jurisdiction over the defendant is consistent with constitutional due process requirements. *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996); *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000). New Mexico applies a three-part test to determine whether it has jurisdiction over a non-resident defendant: "(1) Did the [defendant] commit an act or omission specifically set forth in the long-arm statute; (2) Does [the plaintiff's] cause of action arise out of the alleged acts or omissions; and (3) Has the [defendant] established sufficient minimum contacts with New Mexico to satisfy due process concerns?" *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 48 P.3d 50, 54

(N.M. 2002). New Mexico extends personal jurisdiction as far as constitutionally permissible. *See United Nuclear Corp. v. Gen. Atomic Co.*, 570 P.2d 305, 306 (N.M. 1977). Where a defendant has committed an act qualifying under the long-arm statute, the minimum contacts analysis merges with the analysis of the commission of the act or omission. *See Tercero*, 48 P.3d at 55, 57.

Due process requires that a defendant have sufficient "minimum contacts" with the forum state such that exercising jurisdiction over him does not "offend traditional notions of fair play and substantial justice." *Trierweiler*, 90 F.3d at 1532 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" standard may be satisfied through either specific jurisdiction or general jurisdiction. Specific jurisdiction rests on a matter occurring in the forum state and exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). General jurisdiction arises when the defendant has such "continuous and systematic" contacts with the state that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. *Trierweiler*, 90 F.3d at 1533 (quoting *Helipoteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 & n.9 (1984)).

The New Mexico long-arm statute provides that New Mexican courts may exercise personal jurisdiction over non-residents when any person, individually or through an agent, commits any of the enumerated acts in the statute, including "the transaction of any business within this state" and "the commission of a tortious act within this state." N.M. STAT. ANN. § 38-1-16(A) (West 2016).

"Transaction of any business" means "doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." *Tercero*, 48 P.3d at 55 (quotation omitted). This question turns on whether the defendant's relevant activities "amount to a purposeful act by it to participate in the forum state and avail itself of the benefits and protections of our laws." *Id.* (citing *F.D.I.C. v. Hiatt*, 872 P.2d 879, 882 (N.M. 1994)).

"When negligent acts occur outside New Mexico which cause injury within the state, a 'tortious act' has been committed for purposes of the long-arm statute." *Id.* at 57 (quoting *Roberts v. Piper Aircraft Corp.*, 670 P.2d 974, 977 (N.M. Ct. App. 1983)).

Silver appears to argue that because Quora is on the internet and accessible from everywhere, including New Mexico, and because D'Angelo is Quora's CEO, D'Angelo has either transacted business in New Mexico or committed a tortious act causing injury in New Mexico. Silver offers no argument other than the bald-faced assertion that D'Angelo's failure to "use his vast resources to prevent non-persons and deceitful persons from becoming members of Quora with the intent of libeling persons such as Plaintiff . . . [and] his lassitude [have] caused severe injury to Plaintiff." (Doc. 16 at 6.)

I find no evidence that D'Angelo has purposefully availed himself of the privilege of transacting business in New Mexico or the protection of its laws. Additionally, Silver does not allege any personal act or omission by D'Angelo, other than his alleged failure to expend—presumably financial—resources on Quora's behalf. Silver does not allege that D'Angelo had a duty to Silver or failed to act in accordance therewith. Accordingly, I cannot conclude that D'Angelo committed a qualifying tortious act.

D'Angelo has never been to New Mexico and has no contacts with New Mexico. There is neither allegation nor indication that D'Angelo performed any acts at all of a personal nature in or affecting New Mexico. I conclude that New Mexico courts lack personal jurisdiction over D'Angelo in his individual capacity because he has no contacts with New Mexico and has not committed a qualifying act under the long-arm statute.

The complaint does not include specific allegations as to D'Angelo's conduct in his corporate capacity. However, to the extent that D'Angelo has had any contact with New Mexico, it can safely be said that those contacts were purely in a corporate capacity. Under the fiduciary shield doctrine, jurisdiction over a corporation's representatives cannot be based on jurisdiction over the corporation itself. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987). "If an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise . . . of [personal] jurisdiction over him [in that state] on the basis of that conduct." *Allen v. Toshiba Corp.*, 599 F. Supp. 381, 384 (D.N.M. 1984) (citing *Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). The fiduciary shield doctrine does not apply when the person was a "'primary participant in the alleged wrongdoing intentionally directed' at the forum state, which activities formed the bases of the jurisdiction over the corporation." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1237 (N.M. Ct. App. 2001) (alterations omitted) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Silver does not allege any particular act by D'Angelo that could make him a "primary participant in the alleged wrongdoing," even assuming that the allegedly libelous statements were intentionally directed at New Mexico. Accordingly, I conclude that the fiduciary shield

doctrine applies and personal jurisdiction over D'Angelo cannot be predicated on Quora's actions or inactions.

I find that D'Angelo does not have sufficient minimum contacts with New Mexico to give rise to specific or general jurisdiction, he has not committed a qualifying act under the long-arm statute, and the fiduciary shield doctrine applies to prohibit the exercise of personal jurisdiction over D'Angelo based on jurisdiction over Quora. The motion to dismiss D'Angelo based on lack of personal jurisdiction is granted.

## MOTION FOR SANCTIONS

Silver filed a motion for sanctions against the Defendants under Federal Rule of Civil Procedure 11(c). (Doc. 19.) Silver alleges that the Defendants violated Rule 11(b), affirmatively lied to the Court, and misrepresented facts by stating that Silver registered for Quora on October 1, 2012.

As an initial matter, Rule 11(b) speaks to conduct by "an attorney or unrepresented party" who presents papers to the Court. Therefore, I assume that Silver intended the motion to be for sanctions against defense counsel.

Rule 11(c)(2) contains a safe-harbor provision, which requires that a motion for sanctions be served on the opposing party at least twenty-one days before being filed with the Court, allowing that party to withdraw or correct the allegedly improper material. The Tenth Circuit has held that it is an abuse of discretion to grant Rule 11 sanctions where the moving party did not comply with the safe-harbor provision. *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006); *see also Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012) (reaffirming the *Roth* holding). Because Silver failed to comply with the safe-harbor provision, his motion for sanctions is denied.

**MOTION FOR TRO**

Silver filed motion for a TRO, but his motion makes clear that he seeks a preliminary injunction that would require Quora to remove the allegedly libelous statements about him from its website and notify major search engines to also remove the statements.[1] (Doc. 20.) I treat Silver's motion as a motion for preliminary injunction. The crux of Silver's argument appears to be that the statements on Quora harm him and that D'Angelo has sufficient personal net worth to "spend the money necessary" to have the statements taken down from Quora and from the internet in general. (*Id.* at 4.)

A preliminary injunction is an extraordinary remedy crafted as an exercise of the court's equitable powers to fit the specific situation at hand. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010) (Kennedy, J., with two Justices concurring and two Justices concurring in the judgment); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). When a statute does not specifically authorize injunctive relief, a movant seeking preliminary injunctive relief must show that: 1) he is likely to succeed on the merits, 2) he is likely to suffer irreparable harm in the absence of the preliminary relief, 3) the balance of equities tips in his favor, and 4) the injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Romero-Barcelo*, 456 U.S. at 311-12). The decision to grant injunctive relief, and how to craft such relief, is within the sound discretion of the Court. *Id.*

**A. Likelihood of Success on the Merits**

Silver is unlikely to succeed on the merits. When, as here, a federal court sits in diversity, it applies the substantive law of the forum state. *See Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78

---

[1] Rule 65(b) makes clear that a temporary restraining order may be in place no longer than 14 days. An injunctive order extending beyond this time period is treated like a preliminary injunction under Rule 65(a). *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 86 (1974); *Waste Mgmt., Inc., v. Deffenbaugh*, 534 F.2d 126, 129 (8th Cir. 1976).

11

(1938); *Boyd Rosene and Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). New Mexico uses the term "defamation" instead of "libel" or "slander." UJI 13-1001 NMRA 2016. To succeed on a defamation claim, the plaintiff must prove nine elements:

> [(1) The defendant published the communication; and]
> [(2) The communication contains a statement of fact; and]
> [(3) The communication was concerning the plaintiff; and]
> [(4) The statement of fact was false; and]
> [(5) The communication was defamatory; and]
> [(6) The person[s] receiving the communication understood it to be defamatory; and]
> [(7) The defendant [knew that the communication was false or negligently failed to recognize that it was false] . . . ; and]
> [(8) The communication cause actual injury to the plaintiff's reputation; and]
> [(9) The defendant abused [its] privilege to publish the communication.]

UJI 13-1002(B) NMRA 2016. As to element (7), the standard depends on whether the plaintiff is a public official or a "private" person. *See Marchiondo v. Brown*, 649 P.2d 462, 470 (N.M. 1982). There is no evidence in the record to suggest that Silver qualifies as public official or figure, so the "private" person standard of negligence applies. *Id.*

Here, Silver would bear the burden of establishing that Quora had a duty to verify the veracity of statements posted on its pages and violated that duty. Silver advances no argument or legal theory establishing such a duty.

In contrast, Quora correctly cites to Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." It is likely that Quora qualifies as an "interactive computer service" for the immunity of § 230(c)(1). The grant of immunity applies only if the service provider is not also an "information content provider," that is, someone who is "responsible, in whole or in part, for the creation or development of" the offending content. 47 U.S.C. §

230(f)(3); *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). Quora submitted competent evidence that it does not contribute content. (Doc. 11 Ex. A at 1, Decl. Tan.) Silver does not suggest that Quora created content, merely that it allowed the offending content to persist by refusing to take it down. Accordingly, Silver's allegations rest on "information provided by another information content provider," within the meaning of § 230(c)(1). *See also Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (finding that Facebook is an "interactive computer service" for the same reason).

It is unlikely that Silver could overwhelm § 230(c)(1)'s protection and prove that Quora was negligent in allowing content to persist on its pages. Therefore, it is unlikely that Silver will succeed on the merits of his libel claim and this factor weighs heavily against granting Silver's motion.

### B. Remaining Factors

As to the second factor, Silver claims that the "continued existence of [these] libelous statements on Quora continue to damage Plaintiff's reputation and continue to cost him client, investor and lender losses in the millions of dollars." (Doc. 32 at 8.) Silver did not, however, present evidence beyond his conclusory statements and self-serving allegations of these losses. Further, Silver failed to adduce evidence suggesting that he would suffer new and irreparable harm without a TRO or preliminary injunction. I find that Silver failed to meet his burden of showing that he will suffer irreparable harm in the absence of injunctive relief and conclude that this factor weighs slightly against granting the motion.

With regard to the third factor, the balance of equities, I see this factor as neutral. There is insufficient evidence presented to conclude that Silver could succeed on his claim, but his

alleged harm is severe. Quora is likely to win on the merits, but the burden of complying with an injunctive order would, presumably, be low. Accordingly, this factor is neutral.

Finally, Congress specifically stated that

> It is the policy of the United States—(1) to promote the continued development of the Internet and other interactive computer services and other interactive media; (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation; (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services . . . .

47 U.S.C. § 230(b). Furthermore, Congress established protection for interactive computer services like Quora. It is presumably in the public interest to uphold the policy determinations of Congress. Accordingly, I find that it is not in the public interest to grant Silver's motion.

Because the factors overwhelmingly weight against Silver, his motion for TRO is denied.

## CONCLUSION

For the reasons discussed above, Quora's motion to dismiss on the basis of improper venue is denied and D'Angelo's motion to dismiss for lack of personal jurisdiction is granted. Silver's motion for sanctions under Federal Rule of Civil Procedure 11 is denied. Likewise, the factors weigh against granting Silver preliminary injunctive relief, and his motion for a TRO is denied.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.